Filed 10/14/21  P. v. Lankford CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072649 |
| v. | (Super.Ct.Nos. RIF1803987 & RIF1804692) |
| DANTE MAURICE LANKFORD, | |
| Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed with directions.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.  INTRODUCTION

Defendant, Dante Maurice Lankford, was convicted by a jury of 22 criminal offenses as a result of multiple incidents involving his wife, Jane Doe.  As relevant to this appeal, defendant's convictions included making a criminal threat (Pen. Code, § 422,[1] count 2) and assault with a firearm (§ 245, subd. (a)(2), count 3), as the result of an incident in December 2017; stalking (§ 646.9, subd. (b), count 6), inflicting corporal injury on a spouse (§ 273.5, subd. (f)(2), count 7), and making a criminal threat (§ 422, count 9), as the result of an incident on June 10, 2018; one count of dissuading a witness by use of force (§ 136.1, subd. (c)(1), count 13), as the result of an incident on June 18, 2018; and one count of dissuading a witness (§ 136.1, subd. (a)(2), count 22), as a result of jail calls made in December 2018.[2]

Defendant was sentenced to an aggregate term of 45 years in state prison and ordered to pay various fines and fees.  As relevant to this appeal, his sentence includes

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  In full, defendant was convicted of two counts of committing corporal injury on a spouse or cohabitant resulting in a traumatic condition (Pen. Code, § 273.5, subd. (f)(2), counts 1 & 7), two counts of communicating criminal threats (Pen. Code, § 422, counts 2 & 9), one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2), count 3), one count of possession of a firearm by a prohibited person (Pen. Code, § 29800, subd. (a)(1), count 4), seven counts of violating a protective order (Pen. Code, § 166, subd. (c)(1), counts 5, 12, 15, 16, 18, 21, & 23), one count of stalking (Pen. Code, § 646.9, subd. (b), count 6), one count of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4), count 8), one count of driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a), count 10), one count of first-degree burglary (Pen. Code, § 459, count 11), two counts of dissuading a witness (Pen. Code, § 136.1, counts 13 & 22), two counts of battery of a spouse or cohabitant (Pen. Code, § 243, subd. (e)(1), counts 14 & 20), and two counts of robbery (Pen. Code, § 211, counts 17 & 19).

consecutive, unstayed sentences on counts 6, 7, and 9; two full midterm sentences for each of his convictions for dissuading a witness pursuant to section 1170.15; a one-year enhancement as a result of a prior prison term (§ 667.5, subd. (b)); and an order to pay $1,500 in incarceration costs pursuant to section 1203.1c.

On appeal, defendant contends: (1) the trial court violated his constitutional right to counsel when it denied his request to discharge retained counsel; (2) his convictions for making criminal threats (counts 2 & 9) and assault with a firearm (count 3) were not supported by substantial evidence; (3) the trial court erred in imposing consecutive sentences on counts 6 and 7; (4) the trial court erred in applying section 1170.15 to impose full midterm sentences for his convictions for dissuading a witness; (5) his one-year enhancement pursuant to section 667.5, subdivision (b), should be stricken due to subsequent amendments to that statute; and (6) the order to pay incarceration costs pursuant to section 1203.1c is unauthorized. We conclude the trial court did not abuse its discretion in denying defendant's untimely request to discharge counsel; substantial evidence in the record supports the jury's verdict on counts 2, 3, and 9; and substantial evidence in the record supports the trial court's sentencing decisions. However, we agree with defendant that his one-year enhancement pursuant to section 667.5, subdivision (b), and the order to pay incarceration costs pursuant to section 1203.1c should be stricken. Accordingly, we order that the judgment be modified, and we affirm the judgment as modified.

3

## II. FACTS & PROCEDURAL HISTORY[3]

A. *Facts and Charges*

Jane Doe and defendant had been married for more than 10 years. According to Jane Doe, defendant was verbally and physically abusive throughout their relationship. During the course of their relationship, at least three separate protective orders were issued against defendant, prohibiting various contact with Jane Doe as a result of alleged abuse.[4]

As relevant to this appeal, defendant was charged with inflicting corporal injury on a spouse (§ 273.5, subd. (f)(2), count 1); making a criminal threat (§ 422, count 2) and assault with a firearm (§ 245, subd. (a)(2), count 3), as the result of an incident in December 2017; stalking (§ 646.9, subd. (b), count 6), inflicting corporal injury on a spouse (§ 273.5, subd. (f)(2), count 7), and making a criminal threat (§ 422, count 9), as the result of an incident on June 10, 2018; dissuading a witness by use of force (§ 136.1, subd. (c)(1), count 13), as the result of an incident on June 18, 2018; and dissuading a witness (§ 136.1, subd. (a)(2), count 22), as the result of communications made in December 2018.

-----

[3] Because defendant was convicted of more than 20 different offenses that were committed over the course of more than a year, and because defendant has only challenged some of these convictions on appeal, we summarize only the evidence relevant to the issues raised on appeal.

[4] Specifically, on September 12, 2016, a criminal protective order was issued prohibiting defendant from contacting Jane Doe; a new protective order was issued prohibiting negative contact with Jane Doe on January 17, 2017; and a third protective order prohibiting negative contact with Jane Doe on June 25, 2018.

B. *Relevant Evidence at Trial*

1. Testimony of Jane Doe

Jane Doe testified that defendant was her husband, and the two had a relationship for 10 years, but she had since separated from him. They had three children together. She claimed defendant was verbally and physically abusive throughout their relationship.

Jane Doe recalled an incident with defendant that involved a firearm. At the time of this incident, Jane Doe was home with her three children and her sister. She recalled arguing with defendant. When Jane Doe asked defendant to leave their home, defendant walked to the second floor of the home, retrieved a handgun, returned to the first floor of the home, pointed the gun in Jane Doe's face, and threatened to shoot her. Jane Doe froze and told defendant that if he was intent on shooting her, he should go ahead and do it. While she was afraid, she was also exhausted from constantly fighting because defendant would not let go of their relationship. When Jane Doe's sister intervened, defendant ran to his car and drove away. Jane Doe later acknowledged that this incident occurred sometime in December 2017.

Jane Doe further testified that during the summer of 2018, defendant returned to her home on a number of occasions. Defendant was not supposed to be present at their home because Jane Doe had obtained a restraining order against him, and she had to call 911 for help on about four of these occasions.

On June 10, 2018, Jane Doe was in the bathroom when defendant came to her home uninvited. She testified defendant was not supposed to be at the home because she had obtained a restraining order, she had explicitly told defendant he was not welcome in

5

the home, and she did not invite him inside the home. Defendant argued with Jane Doe and verbally harassed her with disparaging comments. At some point, the argument escalated, and defendant approached Jane Doe and began to physically strangle her. Jane Doe believed defendant began to strangle her when she tried to scream. Finally, while in the process of strangling Jane Doe, defendant verbally threatened to kill her, stating, " 'I'm going to kill you.' " Jane Doe stated that she did not believe defendant, but she also stated that she feared for her life and worried she would die. When their three-year-old son interrupted them, defendant let go of Jane Doe, took her keys, and drove her van away from the home.

Jane Doe testified that, following the June 10, 2018 incident, defendant "kept coming back, and I kept reporting him to the police." However, on each occasion, defendant left before the police arrived in response.

On June 18, 2018, Jane Doe, her two children, and a neighbor were in the living room of Jane Doe's home when defendant broke into the home through a rear entrance. Following an argument with Jane Doe, defendant took Jane Doe's telephone and car keys, ran out of the home, and drove away.

On July 2, 2018, defendant came to Jane Doe's home while her mother was visiting. Jane Doe explained to defendant that he was not supposed to be at the home. When she wouldn't let defendant into the home, he began to yell outside the house. Jane Doe's mother called 911, and the police eventually found defendant on the street nearby Jane Doe's home.

6

On July 13, 2018, Jane Doe was planning a party for her birthday. When she walked out of her home in order to pick up some items from the store, she found defendant waiting outside the home with flowers and a card. When Jane Doe would not accept defendant's gifts, defendant grabbed her car and house keys and left.

2. Testimony of Jane Doe's Neighbor

Jane Doe's neighbor recalled an incident in the "middle" of 2018. The neighbor, Jane Doe, Jane Doe's children, and the neighbor's little brother were inside Jane Doe's home when defendant walked into the home through the kitchen. Defendant and Jane Doe began arguing. At some point, defendant grabbed the neighbor's cell phone out of her hands and left the house. The neighbor eventually found her cell phone on the grass outside of her home. The neighbor confirmed that, at the time, she reported to sheriff's deputies that during the argument between Jane Doe and defendant, defendant grabbed the base of Jane Doe's telephone to prevent Jane Doe from calling 911.

3. Testimony of Sheriff's Deputies

Deputy R. testified that he is a deputy with the Riverside County Sheriff's Department and had been dispatched to a residence in Moreno Valley on December 9, 2017, following a report of a domestic altercation involving a gun. When he arrived, he encountered Jane Doe and her sister, who both appeared "excited." He described Jane Doe as being "hysterical" and "loud" as she was trying to report events to the deputy. He confirmed that, at the time, Jane Doe reported that defendant pointed a gun at her and told her, " 'I will shoot you in the face.' " The deputy eventually discovered that the incident occurred the previous day.

A second sheriff's deputy, Deputy B., testified that he was dispatched to a residence in Moreno Valley on June 10, 2018. A neighbor had reported hearing screams and objects breaking inside the residence. When Deputy B. arrived at the residence, he encountered Jane Doe, who had visible physical injuries and appeared to display a range of emotions while speaking with the deputy. He observed injuries on Jane Doe's left eye and nose, as well as a long scratch extending from her shoulder to her right breast.

A third sheriff's deputy, Deputy Z., testified that he was dispatched to a residence in Moreno Valley on July 2, 2018,[5] in response to a reported restraining order violation. Deputy Z. encountered Jane Doe at the residence, who complained that law enforcement had not been doing enough to keep defendant away from her home. The deputy later discovered defendant inside a vehicle parked at the end of the street where Jane Doe's home was located. Ultimately, the deputy supervised defendant in retrieving some personal items from Jane Doe's home and let defendant leave the area.

Deputy Z. was also dispatched to the same residence on July 13, 2018, in response to a reported restraining order violation. The deputy encountered Jane Doe on the front porch of the residence and observed flowers and a card discarded on the ground nearby. The deputy did not encounter defendant at the residence and, when the deputy contacted defendant by telephone, defendant claimed to be in Los Angeles.

---

[5] The prosecutor appears to have initially stated the date incorrectly in questioning the deputy but later corrected the date in subsequent questioning.

8

4. <u>Recorded 911 Calls</u>

A recording of a 911 call placed on June 10, 2018, was played for the jury. The caller reported that a neighbor, who was multiple houses away, was engaged in a domestic fight. The caller reported hearing items breaking within the house; hearing "booms and loud and everything"; hearing someone yell, " 'Get off of me' "; and hearing a male voice say, " 'I'm gonna shoot you.' " After walking down the street to investigate further, the caller identified Jane Doe's home as the address of the domestic dispute.

A recording of a 911 call placed on June 18, 2018, was played for the jury. In the recording, Jane Doe stated she had recently reported a domestic violence dispute with defendant and recently reported that defendant had stolen her vehicle. Jane Doe stated defendant had returned and broken into her house, yet again, and injured her arm. She further reported that defendant took her cell phone, the house phone, and a visiting neighbor's cell phone. Unprompted, Jane Doe proceeded to explain to the dispatcher that she had previously reported that defendant had threatened her with a weapon, that the responding officer at the time told her she could not prove those allegations, and that she had since found where she believed defendant had hidden the weapon.

A recording of a 911 call placed on July 2, 2018, was played for the jury. In the recording, Jane Doe's mother reported she was at Jane Doe's home; defendant showed up at the home and was trying to throw and break things; and defendant was not supposed to be present because of a restraining order.

A recording of a 911 call placed on July 13, 2018, was played for the jury. In the recording, Jane Doe reported she walked out of her home, intending to go to the grocery

9

store, but encountered defendant on the street outside her home, holding flowers and a card. Jane Doe told him there was a restraining order in place and that he should leave. Defendant was angry, took Jane Doe's keys out of her hands, and drove her car away.

5. December 2018 Jail Calls

Multiple recorded calls placed by defendant in December 2018 while he was incarcerated in the county jail awaiting trial were played for the jury. In one call, defendant repeatedly asked Jane Doe to lie when giving testimony in court. In another call, defendant repeatedly told Jane Doe that "if somethin' happened to [her]," their children would not have anyone to take care of them. Jane Doe asked on multiple occasions for defendant to state what he believed would happen to her, but defendant never provided a direct answer and continued to plead with Jane Doe to consider the welfare of their children "if somethin' happen to you . . . ."

C. *Verdict and Sentence*

On March 22, 2019, the jury convicted defendant on all charges alleged, except for one count of burglary (count 11). The jury also found true each of the special allegations charged. In a bifurcated proceeding, defendant admitted he suffered the prior conviction alleged as the basis for a serious felony, prior strike, and prison prior enhancement.

Defendant was sentenced to a total aggregate term of 45 years in state prison and ordered to pay various fines and fees.[6] The sentence included consecutive, unstayed sentences on counts 6, 7, and 9; two full midterm sentences for each of his

_____

[6] In full, the trial court pronounced judgment as follows:

With respect to the December 2017 incident, defendant was sentenced to 16 years (§ 422, count 2), representing the upper term of three years for making a criminal threat, doubled as the result of his prior strike offense (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)) and enhanced by 10 years for the personal use of a firearm (§ 12022.5, subd. (a)); a consecutive term of three years four months (§ 273.5, subd. (f)(2), count 1), representing one-third the midterm for inflicting corporal injury on a spouse, doubled as a result of the strike prior, and enhanced by one year four months for causing great bodily injury (§ 12022.7); and a concurrent term of 180 days in county jail for violating a protective order (§ 166, subd. (c)(1), count 5). The trial court imposed a sentence of three years for assault with a firearm (§ 245, subd. (a)(2), count 3) and two years for prohibited possession of a firearm (§ 29800, subd. (a)(1), count 4), but stayed those sentences pursuant to section 654.

With respect to the June 10, 2018 incident, the trial court sentenced defendant to a consecutive term of two years for stalking (§ 646.9, subd. (b), count 6), two years for inflicting corporal injury on a spouse (§ 273.5, subd. (f)(2), count 7), one year four months for making a criminal threat (§ 422, count 9), and one year four months for taking a vehicle without consent (Veh. Code, § 10851, subd. (a), count 10), representing one-third the midterm for each offense, doubled as a result of a strike. The trial court also sentenced defendant to a concurrent term of 180 days in county jail for violation of a protective order (§ 166, subd. (c)(1), count 12) and a consecutive term of six years in state prison for dissuading a witness (§ 136.1, count 13), representing a full middle term pursuant to section 1170.15, doubled as a result of defendant's prior strike. Finally, the trial court imposed a midterm sentence of three years for assault (§ 245, subd. (a)(4), count 8) but stayed the sentence pursuant to section 654.

With respect to the other incidents, the trial court sentenced defendant to two concurrent terms of 180 days for battery of a spouse (§ 243, subd. (e)(1), counts 14 & 20); five concurrent terms of 180 days for violations of a protective order (§ 166, subd. (c)(1), counts 15, 16, 18, 21, & 23); two consecutive terms of two years for robbery (§ 211, counts 17 & 9), representing one-third the midterm, doubled for a prior strike; and a consecutive term of four years for dissuading a witness (§ 136.1, count 22), representing a full midterm pursuant to section 1170.15, doubled as a result of a strike prior.

Finally, while the trial court did not specifically recite section 667, subdivision (a), defendant admitted he suffered a prior conviction for a serious felony and, at the time of

*[footnote continued on next page]*

11

convictions for dissuading a witness pursuant to section 1170.15; a one-year

enhancement as a result of a prior prison term (§ 667.5, subd. (b).);[7] and an order to pay

$1,500 in incarceration costs pursuant to section 1203.1c.

## III.  DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Request To Discharge Counsel*

On appeal, defendant contends the trial court erred in denying his request to

discharge counsel.  We disagree.

### 1.  Relevant Background

On January 9, 2019, defendant requested, and the trial court granted, a substitution

of counsel to replace his court-appointed counsel with privately retained counsel.

On March 8, 2019, defendant's case was called for trial.  The trial court and

counsel discussed time estimates for the trial and agreed to time-qualify prospective

jurors based upon that estimate.  Defendant requested bifurcation of trial on the issue of

any prior conviction and, after being advised of his right to have a jury determine the

issue, defendant waived his right to a jury trial on the truth of any prior convictions.  The

---

sentencing, the trial court orally pronounced that it was sentencing defendant to an aggregate term of 45 years in state prison.  Based upon the terms imposed for each conviction, the trial court could not have reached this aggregate term absent the imposition of a five-year enhancement pursuant to that statute, and the subsequent minute order and abstract of judgment confirm the trial court imposed the enhancement.

[7]  The abstract of judgment indicates that this enhancement was imposed but stayed.

parties then argued, and the trial court resolved multiple pretrial motions regarding procedural and evidentiary issues.

One of the pretrial motions requested leave to file an amended information to add a special allegation that defendant had suffered a prior strike offense. Following argument on the issue, the trial court found no prejudice to defendant and permitted the filing of the amended information. After a break in the proceedings, the trial court noted that, in addition to being a lengthy trial, the nature of the case involved extensive allegations of domestic violence and would likely result in many juror requests to be excused. As a result, counsel and the trial court agreed to order 70 jurors for the morning and an additional 30 jurors to be on call in the afternoon for the following day of trial.

Defendant then proceeded to request the court provide an indicated sentence in order to consider the possibility of pleading to all the charges. The trial court agreed to take a further look at the case in order to do so and, after a break in the proceedings, provided defendant with an indicated sentence of "roughly 36 years" in state prison. In response, defendant declined to change his plea and elected to move forward with a trial.

On March 11, 2019, one of the prosecution's subpoenaed witnesses appeared and, after conferring with counsel, the trial court ordered the witness to return to court in three days to provide testimony. Thereafter, defendant again requested that the trial court "consider recalculating the indicated [sentence] and instead of using the mid-term, use the low-term." The trial court declined the request, stating it would not engage in plea bargaining. In response, defendant claimed he needed more time to speak with his retained counsel because he had not been fully informed of the charges and potential

penalties associated with the charges. Following a short recess to permit defendant to confer with his counsel, jury voir dire commenced.

During a break in the voir dire proceedings, defendant requested the trial court "do whatever the equivalent is of a *Marsden* motion for retained counsel."[8] The trial court proceeded to hold a *Marsden*-type hearing in which it permitted defendant to present his reasons for requesting the discharge of his counsel. During this hearing, defendant complained that additional charges had been added at the time of his preliminary hearing, and he never received an explanation for those new charges. However, both his counsel and the trial court noted that this complaint was not relevant because defendant was represented by different counsel at the time.

After permitting defendant to set forth his reasons for requesting the discharge of his counsel, the trial court denied defendant's request. Specifically, the trial court stated: "Well, I listened to what you have to say, but I can't find that there is good cause to discharge [defense counsel]. [¶] . . . [¶] And the concern that I have, part of that equation, is we're here, ready for trial, we've summoned jurors, and it will result in a delay for you to obtain another attorney and for that attorney to be brought up to speed on the case. [¶] . . . And the case is fairly old, and there's been, apparently, some difficulty in getting people to—here in court as witnesses. And I think any further delay would be unreasonable at this point. [¶] So I'm denying the request to discharge [defense counsel]."

---

[8] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

14

2.  General Legal Principles and Standard of Review

" 'The right to retained counsel of choice is—subject to certain limitations—guaranteed under the Sixth Amendment to the federal Constitution.  [Citations.]  In California, this right "reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain." [Citations.]' . . . [W]ith regard to *discharging* a retained attorney, a defendant need not demonstrate either that counsel 'is providing inadequate representation [citations], or that he and the attorney are embroiled in irreconcilable conflict [citation].' " (*People v. O'Malley* (2016) 62 Cal.4th 944, 1004.)  " 'The right to discharge a retained attorney is, however, not absolute.  [Citation.]  The trial court has discretion to "deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]." ' " (*Ibid.*; see *People v. Verdugo* (2010) 50 Cal.4th 263, 311.)

"We review a trial court's denial of a request to discharge retained counsel for an abuse of discretion.  [Citation.]  A trial court 'must exercise its discretion reasonably:  "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." ' " (*People v. Lopez* (2018) 22 Cal.App.5th 40, 47.)  "The erroneous denial of a defendant's right to discharge retained counsel is presumptively prejudicial and automatically requires reversal." (*Ibid.*; see *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1411 [erroneous denial constitutes structural error requiring reversal without a showing of prejudice].)

15

3. Application

Here, defendant's request to substitute retained counsel was made after the trial court had already resolved extensive evidentiary and procedural issues in pretrial motions and had already time-qualified jurors based upon the trial estimates provided by both counsel, and after jury voir dire had already commenced.[9] The trial court noted there was a history of difficulty securing the appearance of witnesses, and at least one witness had already appeared and had been ordered to return on a specific date based upon the assumption that trial would proceed as scheduled. Additionally, defendant had not identified or retained new counsel at the time of his request. Given this procedural posture, the trial court could reasonably conclude that defendant's request was not made in a timely fashion and would result in significant disruption to the orderly processes of justice.

Nor did defendant present any compelling interest weighing in favor of granting his request. Upon defendant's request, the trial court held a *Marsden*-type hearing in order to provide defendant the opportunity to establish inadequate representation or an irreconcilable conflict, but defendant was unable to do so. Further, defendant's request came only after seeking an indicated sentence from the trial court and only after the trial court rebuffed defendant's attempt to negotiate a lower indicated sentence, suggesting defendant had a strong desire to delay trial. Accordingly, we cannot conclude, based on

---

[9] Defendant's claim that his request was made prior to voir dire is not supported by the record. The reporter's transcript of proceedings indicates that jury voir dire had already begun, and defendant's request was made during a recess in the voir dire proceedings.

16

the record, that the trial court abused its discretion in denying defendant's request to discharge retained counsel.

Defendant argues the trial court improperly applied a *Marsden* standard in denying his request. However, this contention is unsupported by the record. In stating that it did not find good cause to grant defendant's request, the trial court listed numerous reasons why discharging counsel would result in unwarranted delay and disruption, which were all appropriate reasons for denying a request to discharge retained counsel. These reasons were not based upon the standards set forth in *Marsden*. They included the age of the case, the lateness of the request, the difficulty in obtaining witnesses, the fact that one witness had already been ordered back for a specific date, and the fact that the request came only after defendant's attempts to plea bargain with the court were rebuffed. These facts suggest that defendant did not have any concerns with his counsel until his attempts to get the sentence he sought was rejected, and they also suggest that the defendant sought to delay the trial without any satisfactory reason.

17

Thus, the record does not suggest the trial court relied on improper legal criteria in ruling on defendant's request.[10] Because the record does not show an abuse of discretion in the trial court's denial of defendant's request to discharge counsel, we decline to reverse on this ground.

B. *Substantial Evidence Supports the Challenged Verdicts*

On appeal, defendant also contends that his convictions for making criminal threats in violation of section 422 (counts 2 & 9), as well as his conviction for assault with a firearm (count 3), were not supported by substantial evidence. We disagree.

1. General Legal Principles and Standard of Review

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the

---

**10** The fact that the trial court held a *Marsden*-type hearing in this case does not suggest otherwise. As our Supreme Court has explained, "while 'a defendant seeking to discharge his retained attorney is not *required* to demonstrate inadequate representation or an irreconcilable conflict, this does not mean that the trial court cannot properly consider the absence of such circumstances in deciding whether discharging counsel would result in disruption of the orderly processes of justice.' " (*People v. O'Malley*, *supra*, 62 Cal.4th at p. 1004.) Thus, while a trial court cannot require a defendant to demonstrate inadequate representation or an irreconcilable conflict as a prerequisite to permitting the discharge of a retained attorney, where a defendant affirmatively claims that such a reason exists, the trial court should permit a defendant the opportunity to make such a showing. Obviously, to the extent a defendant shows inadequate representation or an irreconcilable conflict, that would present a compelling interest weighing in favor of granting an otherwise untimely or disruptive request to discharge retained counsel. In this context, conducting a *Marsden*-type hearing constitutes nothing more than giving defendant an opportunity to present valid reasons for granting his request. It does not suggest the trial court applied an incorrect standard in ultimately evaluating the merits of defendant's request.

18

defendant guilty beyond a reasonable doubt.' " (*People v. Smith* (2005) 37 Cal.4th 733, 738-739; see *People v. Cravens* (2012) 53 Cal.4th 500, 507-508.) " 'The focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on 'isolated bits of evidence.' " (*People v. Medina* (2009) 46 Cal.4th 913, 919.)

" 'In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support" the jury's verdict.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

2. <u>Substantial Evidence Supports the Convictions for Making Criminal Threats</u>

Generally, a violation of section 422 requires the prosecution to establish five elements.[11] However, on appeal, defendant challenges only the sufficiency of the evidence to support one of these elements—that the defendant's threat caused Jane Doe to be in sustained fear for her safety. Thus, we review the record to determine if substantial evidence supports the element of sustained fear with respect to count 2 and count 9.

" 'Sustained fear' refers to a state of mind . . .[;] 'it means a period of time that extends beyond what is momentary, fleeting or transitory.' [Citation.] The word fear, of course, describes the emotion the victim experiences." (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) Even a period of time as short as a minute can, depending on the circumstances, be sufficient to establish the sustained fear necessary to support a conviction. (*Ibid.*) "In addition, sustained fear must be objectively and subjectively reasonable." (*People v. Roles* (2020) 44 Cal.App.5th 935, 942.)

---

[11] "Section 422 provides five elements: '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*People v. Roles* (2020) 44 Cal.App.5th 935, 941-942.)

Defendant's conviction on count 2 was premised upon the incident in December 2017. With respect to that incident, Jane Doe testified that during the course of a heated argument, defendant retrieved a gun, pointed it at Jane Doe's face, and threatened to shoot her. Without question, such evidence would establish an objectively reasonable basis for Jane Doe to experience sustained fear for her safety. Additionally, Jane Doe directly testified she was afraid during the incident and later called law enforcement for help. Thus, there was direct and circumstantial evidence upon which the jury could rely to conclude Jane Doe subjectively felt sustained fear. (See *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538 [victim's act of calling the police is evidence upon which a jury may infer the victim genuinely feared for her safety].)[12]

The fact that Jane Doe equivocated when asked whether she experienced fear by stating, "Yes, a little," or that Jane Doe admitted she told defendant to shoot her in response to the threat does not compel a different conclusion. The testimony of a single witness constitutes substantial evidence in support of a verdict even if it is inconsistent or false as to some portions. (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221; *People v.*

---

[12] The fact that Jane Doe did not call the police until the following day does not preclude reliance on this evidence to infer sustained fear. The element of sustained fear may be satisfied even where the victim does not immediately experience fear upon hearing the threat but reaches that emotional state at a later time. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1342 [jury entitled to find defendant's threat placed victim in a state of "sustained fear," even where victim admitted she was not initially frightened for her life upon hearing defendant's words but reached that state 30 minutes later].) Additionally, because Jane Doe testified defendant immediately ran to his car and drove away when their argument was interrupted, the jury could reasonably conclude Jane Doe's act of calling the police the following day resulted from sustained fear, since defendant continued to possess his gun and could still carry out his threat.

21

*Wetle* (2019) 43 Cal.App.5th 375, 388.)  Indeed, a jury may reasonably infer a victim subjectively experienced sustained fear even when the victim's inconsistent testimony includes an express denial of experiencing any fear.  (See *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1338 and 1340 [concluding sufficient evidence supported victim's sustained fear where victim claimed to be fearful in preliminary hearing testimony but expressly denied experiencing fear when testifying at trial].)  Thus, we conclude substantial evidence in the record supports the jury's verdict on count 2.

Defendant's conviction on count 9 was premised upon the June 10, 2018 incident.  With respect to this incident, Jane Doe testified defendant surprised her in the bathroom of her home, strangled her with his hands, and verbally threatened to kill her.  Again, such evidence would establish an objectively reasonable basis for Jane Doe to experience sustained fear for her safety.

Substantial evidence also supports a reasonable conclusion Jane Doe experienced subjective fear for her safety.  While at one point in her testimony, Jane Doe admitted she did not initially believe defendant when he stated, " 'I'm going to kill you,' " Jane Doe equally testified she was afraid, feared for her life, and was worried she was going to die.  Further, the prosecution presented a 911 call in which a neighbor reported hearing Jane Doe scream that defendant was going to shoot her.  Thus, at best, there was conflicting evidence from which competing inferences could be drawn on this issue.  However, for purposes of a substantial evidence review, this court does not reweigh conflicting evidence or reevaluate the credibility of witnesses.  (*People v. Skiff* (2021) 59 Cal.App.5th 571, 579.)  So long as there is credible evidence in the record from which

the jury could have concluded Jane Doe subjectively experienced sustained fear, reversal is not warranted on appeal.

Substantial evidence in the record supports a reasonable conclusion that Jane Doe's sustained fear was both objectively and subjectively reasonable under the circumstances. As such, reversal of defendant's conviction for making a criminal threat in count 2 and count 9 is not warranted.

3. Substantial Evidence Supports the Conviction for Assault with a Firearm

Generally, a violation of section 245, subdivision (a)(2), requires the prosecution to prove five elements.[13] However, on appeal, defendant challenges only the sufficiency of the evidence to support one of these elements—that he had a present ability to apply force with his firearm. Specifically, defendant contends there was no evidence to show the firearm he used to threaten Jane Doe was loaded at the time of the assault. Thus, we review the record to determine if substantial evidence supports a reasonable conclusion that defendant's firearm was loaded with respect to count 3.

Defendant's conviction on count 3 was premised upon the December 2017 incident involving a gun. As we have already detailed, Jane Doe testified that, during the course of a heated argument, defendant retrieved a gun, pointed it at Jane Doe's face, and

---

[13] The elements are: (1) defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person; (2) the defendant did that act willfully; (3) when the defendant acted, he/she was aware of facts that would lead a reasonable person to realize that his/her act by its nature would directly and probably result in the application of force to someone; (4) when the defendant acted, he/she had the present ability to apply force with a firearm; and (5) the defendant did not act in self defense. (See Pen. Code, §§ 240, 245, subd. (a)(2); CALCRIM No. 875.)

threatened to shoot her.  As defendant correctly points out, there is no direct testimony that the gun he was holding at the time was loaded with ammunition during this incident.

However, "California courts have often held a defendant's statements and behavior while making an armed threat against a victim may warrant a jury's finding the weapon was loaded."  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 12; see *People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 541 [Defendant's act of verbally threatening, displaying, and aiming a gun at others "fully supported the jury's determination the gun was sufficiently operable."].)  In fact, in *People v. Rodriguez*, our Supreme Court endorsed the view that, where a defendant leaves a fight while enraged, returns with a gun, levels the gun at the victim's head, and makes statements indicating an intent to use the gun, such conduct "may support a rational fact finder's determination that [the defendant] used a loaded weapon," and "[w]e cannot say the jury could not reasonably make such a determination."  (*Id.* at p. 13.)  Jane Doe's testimony in this case mirrors the exact factual scenario endorsed by our Supreme Court.  Accordingly, we find no merit in defendant's argument that there was insufficient evidence to support his conviction on count 3.

C.  *Substantial Evidence Supports the Trial Court's Decision to Impose Separate Punishment on Counts 6, 7, and 9*

Defendant also contends the trial court erred when it imposed separate punishment on his conviction for stalking (count 6), spousal battery (count 7), and making a criminal threat (count 9).  Specifically, defendant argues that he should not be subject to separate punishment because all three offenses were accomplished for the same general objective.

24

Alternatively, defendant argues for the first time in his reply brief that convictions were premised upon the same physical act. We conclude substantial evidence supports an implied finding that separate physical acts form the basis of all three convictions and further conclude substantial evidence supports an implied finding defendant harbored separate intents in the commission of each offense.

1.  General Legal Principles and Standard of Review

Generally, section 654 prohibits multiple punishments for a single act or an indivisible course of conduct. (*People v. Leonard* (2014) 228 Cal.App.4th 465, 498-499.) "Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for the act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

" 'The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination.' [Citation.] A court's expressed or implied findings on this point must be upheld if supported by substantial evidence." (*People v. Kopp* (2019) 38 Cal.App.5th 47, 91; see *People v. Leonard*, *supra*, 228 Cal.App.4th at p. 499.)

2. Substantial Evidence Supports the Implied Finding Separate Physical Acts Gave Rise to Each Offense

Here, defendant's conviction on counts 6, 7, and 9 all arose from the June 10, 2018 incident in which he strangled Jane Doe. However, defendant's characterization that all three convictions were based upon the same physical act of strangling Jane Doe is unsupported by the record.

We agree that defendant's conviction in count 7 for inflicting corporal injury on a spouse resulting in a traumatic condition must have been premised upon his physical act of violence in strangling Jane Doe, since a violation of the statute requires the infliction of physical injury. (§ 273.5, subds. (a), (f)(2).) However, defendant's conviction in count 9 for making a criminal threat could not have been based upon the same physical act because a violation of section 422 cannot be based upon a threat implied by conduct. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1147 ["[A] threat made through nonverbal conduct falls outside the scope of section 422."].) Thus, these two offenses could not have been premised upon the same physical act.

Defendant's conviction for stalking presents a closer question. While the offense requires that the defendant make a "credible threat" as an essential element, the "credible threat" in support of a stalking conviction may be verbal, written, or implied through a course of conduct. (§ 646.9, subds. (a), (g); see *People v. Lopez* (2015) 240 Cal.App.4th 436, 449 [The threat underlying a stalking conviction may be implied from a course of conduct.].) Additionally, the type of communication sufficient to constitute a threat for purposes of section 646.9 differs in nature from the type necessary to constitute a threat

26

for purposes of section 422. (See *People v. Cruz* (2020) 46 Cal.App.5th 715, 732 ["[T]he 'credible threat' element of stalking differs from the threat element of making a criminal threat."].) Thus, it is plausible that defendant's conviction for stalking is premised upon the same physical act of strangulation forming the basis for his conviction in count 7 or the same verbal threat forming the basis of his conviction in count 9. Nevertheless, while this is one conclusion that could be drawn, the evidence in this case did not compel such a conclusion.

Defendant's initial act of making an uninvited appearance at Jane Doe's home could, in itself, constitute the credible threat in support of a stalking conviction. (See *Lopez, supra*, 240 Cal.App.4th at p. 450 [A defendant's persistent contact with the victim, despite being told to stop, can be reasonably interpreted as a credible threat.]; see also *People v. Uecker* (2009) 172 Cal.App.4th 583, 594-595 [A defendant's repeated contact with the victim, despite the victim's firm representation she did not want contact, could constitute an implied credible threat.]; see also *People v. Itehua* (2014) 227 Cal.App.4th 356, 360-361 [A defendant's actions such as repeated contact and appearances at the victim's home, despite the victim's desire not to have contact and a restraining order, could be the basis for an implied credible threat.].) Thus, the record contains evidence from which the trial court could reasonably conclude that the physical act underlying the "credible threat" element of defendant's stalking conviction was separate from the physical act of strangling Jane Doe and separate from his verbal threat to kill Jane Doe.

Further, the jury made no specific factual finding regarding the credible threat element of defendant's stalking conviction.[14] Accordingly, the trial court was entitled to make its own factual finding for purposes of determining whether section 654 applied. (*People v. Deegan* (2016) 247 Cal.App.4th 532, 545 [" 'Ordinarily, in determining whether [section 654] applies, the trial court is entitled to make any necessary factual findings not already made by the jury.' "].) In doing so, it " 'may base its decision . . . on *any* of the facts that are in evidence at trial, without regard to the verdicts' " and " 'may even rely on facts underlying verdicts of *acquittal* in making sentencing choices.' " (*People v. Carter* (2019) 34 Cal.App.5th 831, 842.) Further, the trial court was not limited by the representations of the prosecutor in argument. (*People v. Green* (1988) 200 Cal.App.3d 538, 545 fn. 5 [trial court not required to accept prosecutor's concession regarding application of § 654].) Thus, because the record contains evidence that a separate physical act could have formed the basis of the "credible threat" element underlying defendant's conviction for stalking and because the trial court was not limited by any findings by the jury, the trial court did not err to the extent it made an implied finding that all three convictions were based upon separate physical acts.

---

[14] Nor does anything in the record suggest that the jury was limited to consideration of defendant's oral threat or the act of strangulation as the basis for finding defendant made a credible threat in support of his stalking conviction. The charging document does not limit the stalking allegations to a verbal threat; the jury was generally instructed it could find a credible threat in support of stalking based upon implied conduct; and the verdict form does not suggest the specific basis for the jury's verdict. While the prosecutor referenced defendant's verbal statement in closing argument on this issue, the prosecutor equally asked the jury to consider the totality of the circumstances presented by the evidence.

3.  Substantial Evidence Supports the Implied Finding Defendant Harbored Separate Intents

Having concluded that substantial evidence supports an implied finding that defendant's convictions for counts 6, 7, and 9 arise from separate physical acts, we must still determine whether substantial evidence supports an implied finding that defendant committed each offense with a separate intent or objective.

While it is undisputed that the acts forming the basis for each of these convictions arise out of the same incident, this fact is not conclusive.  "The temporal proximity of two offenses is insufficient by itself to establish that they were incidental to a single objective. [Citations.]  Objectives may be separate when 'the objectives were either (1) consecutive even if similar or (2) different even if simultaneous.'  [Citations]  Section 654 'cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense.' "  (*People v. Vazquez* (2020) 44 Cal.app.5th 732, 737.)  Upon review of the record in this case, we conclude that the trial court could reasonably infer separate intents for each offense.

First, the trial court could reasonably conclude that defendant harbored similar, but consecutive, intents when stalking and subsequently inflicting corporal injury on Jane Doe.  California courts have repeatedly found that where, in the commission of one offense, a defendant engages in a violent escalation constituting a separate offense, a separate intent may be inferred.  (*In re Jesse F.* (1982) 137 Cal.App.3d 164, 171 [separate intent where defendant attempts to murder robbery victim in response to victim's attempt to flee]; *People v. Coleman* (1989) 48 Cal.3d 112, 162-163 [separate intent may be found

where defendant stabs victim during course of robbery]; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 271-272 [separate intent where defendant violently beats victim unconscious during robbery]; *People v. Vasquez, supra*, 44 Cal.App.5th at p. 739 [separate intent where defendant stabbed victim and then subsequently bit victim's fingers when she fought back].)

Here, Jane Doe's testimony suggested defendant's actions on June 10, 2018, occurred as a series of escalating events. Defendant entered Jane Doe's home, despite being explicitly told that he was not welcome. While there, he argued with Jane Doe and verbally harassed her with disparaging comments in violation of a no-negative-contact restraining order. At some point, the argument escalated, and defendant began to physically strangle Jane Doe when she tried to scream. Finally, while in the process of strangling Jane Doe, defendant verbally threatened to kill her.

Clearly, the act of strangling Jane Doe represented a violent escalation from defendant's initial act of showing up uninvited at Jane Doe's home or engaging in negative contact with Jane Doe in violation of a restraining order. Based upon this evidence, the trial court could reasonably conclude that defendant came to Jane Doe's home with the objective of stalking her and formed a separate intent to strangle her after being angered during the course of their ensuing argument.

Second, the trial court could reasonably infer that defendant harbored a simultaneous, but separate, intent when making a criminal threat. It is undisputed that defendant made his verbal threat to kill Jane Doe at the same time he was physically strangling her. However, a defendant may be found to have different objectives even if

30

two offenses are committed simultaneously, and a defendant may harbor different objectives when making a criminal threat and seeking to carry out that threat. (See *People v. Mejia* (2017) 9 Cal.App.5th 1036, 1047 [criminal threat may be separately punished from torture of same victim]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1022 [defendant's criminal threat to burn down victim's house may be separately punished from act of arson an hour later].)

On this point, *In re Raymundo M.* (2020) 52 Cal.App.5th 78, is instructive. In that case, a minor was convicted of assault and making a criminal threat "[a]fter he raised a switchblade-like knife head-high and chased another minor while orally threatening him." (*Id.* at p. 82.) In upholding the imposition of separate punishment for each offense, the Court of Appeal explained: "[T]he [trial] court could reasonably have found that [defendant] committed the assault with the objective of inflicting physical harm on [the victim], whereas [defendant] criminally threatened [the victim] with the separate objective of inflicting *mental or emotional* harm." (*Id.* at p. 95.) The facts of this case are no different. Indeed, to the extent the evidence suggests defendant was already in the process of inflicting physical harm on Jane Doe at the time he verbally stated his threat to kill her, it was more than reasonable for the trial court to conclude he harbored a separate objective in doing so. If defendant was already in the process of strangling Jane Doe, his words served no purpose other than to inflict additional emotional harm.

Substantial evidence in the record supports the trial court's implied finding that defendant harbored separate intents with respect to his convictions for stalking, committing corporal injury on a spouse, and making a criminal threat. Thus, we find no

31

error in the trial court's decision to impose separate punishment for each of these offenses.

D. *Sentencing Issues*

    1. <u>The Trial Court Did Not Err in Applying Section 1170.15</u>

Defendant was convicted of dissuading a witness by use of force (§ 136.1, subd. (c)(1), count 13) arising out of the June 18, 2018 incident in which he took Jane Doe's phone to prevent her from calling the police; and dissuading a witness (§ 136.1, subd. (a)(2), count 22), arising out of his jail calls in December 2018. The trial court sentenced defendant to a full middle term on each of these counts pursuant to section 1170.15. Defendant argues the trial court erred because section 1170.15 does not apply. We disagree.[15]

    a. General Legal Principles and Standard of Review

Normally, where a defendant is convicted of two or more felonies and the trial court sentences the defendant to consecutive terms of imprisonment, each consecutive term consists of one-third the middle term of imprisonment prescribed for the subordinate felony conviction. (§ 1170.1, subd. (a).) "Section 1170.15 is an exception to the rule set forth in section 1170.1, subdivision (a)" and "provides that when a defendant is convicted of a felony, and also convicted of a second felony for a violation of section 136.1

---

[15] We also disagree with the People's argument that the issue has been forfeited on appeal. An error that involves "an unauthorized sentence is not subject to forfeiture, can never be harmless," and "may be corrected at any time by a court with jurisdiction." (*People v. Cabrera* (2018) 21 Cal.App.5th 470, 477.) Thus, while we conclude defendant's claim has no merit, the claim that defendant was subjected to an unauthorized sentence could not have been forfeited.

(dissuading a witness) involving a witness to the first felony, 'the subordinate term for each consecutive offense' of dissuading a witness must be the full middle term . . . ." (*People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1478-1479; see § 1170.15.)  As the words of the statute make clear, "for section 1170.15 to apply, the dissuasion for which the defendant was convicted must relate to another felony, of which the defendant was also convicted." (*People v. Evans* (2001) 92 Cal.App.4th 664, 670.)  "Section 1170.15 does not create an enhancement, but an alternative sentencing scheme." (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1835.)  The specific factual basis for imposition of section 1170.15 "need not be specifically pleaded and proven" and, instead, the sentencing judge is tasked with making the determination whether the dissuasion for which the defendant was convicted relates to another felony.  (*Hennessey*, at p. 1835.)

"A trial court's sentencing decision is subject to review for abuse of discretion. [Citation.]  '[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.  [Citations.]'  ' "The circumstances utilized by the trial court to support its sentencing choice need only be established by a preponderance of the evidence. [Citations.]"  [Citation.]  Accordingly, in determining whether a trial court abused its discretion . . . we consider, in part, whether there is sufficient, or substantial, evidence to support the court's finding that a particular factor was applicable.' "  (*People v. Hicks* (2017) 17 Cal.App.5th 496, 512.)  In doing so, we are mindful of the fact that "California law affords the trial court broad discretion to consider relevant evidence at sentencing... The court specifically is authorized to consider 'the record in the case' " (*People v.*

*Towne* (2008) 44 Cal.4th 63, 85) and may even consider evidence and facts principally directed toward other charges of which the defendant was acquitted (*id.* at p. 86; see *People v. Carter*, *supra*, 34 Cal.App.5th at pp. 844-845).

      b.  Application

Here, defendant's only argument on appeal is that section 1170.15 cannot apply because the only other crimes committed on the specific dates he engaged in dissuasion—June 18, 2018 and December 2018—were misdemeanors. However, section 1170.15 contains no language suggesting that its application is limited to situations in which the act of dissuasion and the underlying felony occurred on the same date. Nor does defendant cite any authority for this proposition.

Instead, California authorities recognize that "time is not a material ingredient of the offense" of dissuasion. (*People v. Torres* (2019) 39 Cal.App.5th 849, 858.) Dissuasion may occur "over a period of time as well as instantaneously" (*People v. Salvato* (1991) 234 Cal.App.3d 872, 883) and may occur after a defendant has been arrested for the underlying crime (*People v. Velasquez* (2011) 201 Cal.App.4th 219, 232-233). Thus, the fact that the only other crimes for which defendant was convicted on June 18, 2018 and in December 2018 happened to be misdemeanors is entirely irrelevant. Defendant could have validly been convicted of dissuasion pertaining to crimes committed on a date other than the date in which he engaged in the act of dissuasion and, to the extent such underlying crimes were felonies, section 1170.15 can be validly applied at the time of sentencing.

Here, count 13 alleged defendant dissuaded a witness on June 18, 2018, and that the charge was "connected in its commission with the charge set forth in counts 1 through 12." Thus, in determining whether the dissuasion for which defendant was convicted relates to another felony, the trial court was permitted to consider any of the offenses charged in counts 1 through 12. As relevant here, defendant was convicted of counts 7 through 10, which were all felonies alleged to have occurred the week prior to June 18.

According to Jane Doe, defendant appeared at her home on June 18, 2018, uninvited; the two argued over the fact that defendant was not supposed to be there and needed to leave, and defendant grabbed her telephone to prevent her from calling the police. While one natural inference is that defendant grabbed Jane Doe's telephone to prevent her from reporting the specific crimes he was engaged in at the time, this is not the only reasonable inference that can be drawn from the evidence. Jane Doe testified that in the week leading up to this incident, defendant "kept coming back and I kept reporting him to the police." Further, when Jane Doe finally managed to call 911 on June 18, she attempted to provide information she claimed to have had recently discovered related to prior alleged crimes. Thus, the trial court could reasonably infer that at least part of Jane Doe's argument with defendant on June 18 involved his prior crimes as the reason he was not welcome in her home. In this context, it was not unreasonable for the trial court to conclude that defendant's act of taking Jane Doe's telephone was, in part,

intended to prevent her from reporting additional information regarding the underlying felonies that allegedly occurred the week prior and for which defendant was convicted.[16]

With respect to count 22, the information alleged defendant dissuaded a witness in December 2018, and the charge was "connected in its commission with the charge[s] set forth in counts 1 through 21 . . . ." In his calls to Jane Doe in December 2018, defendant explicitly encouraged her to either refuse to appear or to lie in her anticipated testimony to the court. It is undisputed these calls were made shortly before Jane Doe's anticipated preliminary hearing testimony on December 27, 2018, and that this testimony covered multiple incidents that gave rise to felonies for which defendant was ultimately convicted, including the events of June 10, June 18, July 2, and July 13, 2018. Accordingly, substantial evidence in the record supports the trial court's conclusion that the dissuasion for which defendant was convicted of in count 22 related to other felonies of which defendant was also convicted.

Because substantial evidence supports the trial court's decision, we find no error in the trial court's application of section 1170.15 to impose a full midterm sentence on defendant's convictions for dissuasion in violation of section 136.1.

---

[16] Defendant's focus on the prosecutor's closing arguments to the jury is misplaced. "Ordinarily, for purposes of substantial evidence review, 'the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury.' " (*People v. Brown* (2017) 11 Cal.App.5th 332, 341; see *People v. Perez* (1992) 2 Cal.4th 1117, 1126.) More importantly, as we have already noted, for the purpose of sentencing decisions, the trial court is not limited to consideration of the evidence in support of the jury's verdict. (*People v. Towne*, *supra*, 44 Cal.4th at pp.85-86.) Nor is the trial court limited by the representations of the prosecutor in argument. (*People v. Green*, *supra*, 200 Cal.App.3d at p. 545, fn. 5 [trial court not required to accept prosecutor's concession regarding application of § 654].)

36

## 2. Defendant's Prison Prior Enhancement Should Be Stricken

Defendant argues that his one-year sentence enhancement, imposed as the result of a prior felony conviction involving a term in state prison, must be stricken in light of recent amendments to section 667.5, subdivision (b), embodied in Senate Bill No. 136. (Stats. 2019, ch. 590, §1.) The amendment became effective January 1, 2020, and precludes the imposition of one-year sentence enhancements for prior prison terms unless the prior offense was sexually violent in nature. (§ 667.5, subd. (b).) The People concede that the prior convictions underlying defendant's sentence enhancements here would not qualify under the amended statute. Because the amendment is ameliorative in nature and defendant's conviction was not yet final at the time the amendment took effect, we agree that defendant's one-year sentence enhancements pursuant to section 667.5, subdivision (b), should be stricken. However, because the abstract of judgment indicates this enhancement was stayed, remand for resentencing is unnecessary, and the error can be corrected by ordering that the judgment be modified to indicate the enhancement has been stricken instead of stayed.

## 3. The Order To Pay Incarceration Costs Pursuant to Section 1203.1c Should Be Stricken

Defendant also contends, the People concur, and we agree that the trial court's imposition of a $1,500 assessment against defendant pursuant to section 1203.1c was unauthorized. Under section 1203.1c, a trial court is only authorized to order the defendant to pay reasonable costs of incarceration when ordered to a period of confinement in county jail, city jail, or another local detention facility. Since defendant

here was ordered to serve his term of confinement in state prison, the trial court was not authorized to impose costs of incarceration pursuant to that statute, and that portion of defendant's sentence should be stricken as unauthorized. (*People v. Smith* (2001) 24 Cal.4th 849, 854.)

## IV. DISPOSITION

The judgment is modified to indicate defendant's prison prior enhancement imposed pursuant to section 667.5, subdivision (b), has been stricken instead of stayed, and further modified to strike the imposition of a $1,500 assessment pursuant to section 1203.1c. The trial court is directed to prepare an amended abstract of judgment to reflect these modifications and to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


RAMIREZ
P. J.


MILLER
J.

38